IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICIA DENNIE                                                                                    PLAINTIFF

V.                                              NO. 14-5217

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                    DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Patricia Dennie, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for DIB on February 27, 2012, alleging an inability to work since June 1, 1998, due to migraine headaches, back and neck problems, pain, left ankle, anxiety, and sleep problems. (Tr. 124-130, 139, 144).  At the administrative hearing that was held on December 4, 2012, Plaintiff amended her onset date to September 4, 2001. (Tr. 25-52).   Plaintiff appeared with counsel at the hearing and she and her husband testified. (Tr. 25-52).  Plaintiff's date last insured was December 31, 2003. (Tr. 139).  Accordingly, the relevant time period for DIB purposes is from September 4, 2001, to December 31, 2003.

By written decision dated March 28, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – fibromyalgia and disorder of the back. (Tr. 10). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 10). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. 404.1567(b). (Tr. 11). With the help of the vocational expert (VE), the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a nursing teacher. (Tr. 17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 19, 2014. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's

2

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.    Discussion:

Plaintiff raises the following issues in this matter:  1)  Whether the ALJ erred in failing to identify all severe conditions; 2)   Whether the ALJ erred in failing to give controlling weight to Plaintiff's treating physician; 3)   Whether the ALJ erred in his credibility findings; and 4)  Whether the ALJ erred in finding Plaintiff could return to her past relevant work. (Doc. 8).

#### A.    Severe Impairments:

Plaintiff argues that her migraine headaches were a severe condition.  An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)ii), 416.920(a)(4)(ii).   An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § § 404.1521, 416.921.   The Supreme Court has adopted a "de minimis standard" with regard to the severity standard.  Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989).

In his decision, the ALJ found that all other impairments alleged, other than fibromyalgia and disorder of the back, were non-severe, "as they have been responsive to

4

treatment and/or cause no more than minimally vocationally relevant limitations (SSR 85-28)." (Tr. 10). Although the medical records during the relevant time period indicate that Plaintiff did report she suffered from migraine headaches, it is noteworthy that on February 19, 2002, Plaintiff saw her treating physician, Dr. Kimberly Emerson, for a two month follow-up and reported that her pain medication was working because she did not have daily headaches. (Tr. 235). When Plaintiff saw Dr. Emerson on September 8, 2003, she told Dr. Emerson that two weeks prior, a doctor had changed her hormone replacement therapy to thyroid at night, and that she had been experiencing a migraine for 2 ½ days. (Tr. 208). She reported that the Phenergan did help with the migraines, and that she was using Estradiol 2 mg. for breakthrough flashes. (Tr. 208). Although Dr. Emerson continued to include migraine headaches in her assessments during the relevant time period, it is noteworthy that on December 30, 2003, Plaintiff reported to Dr. Emerson that she was leaving to drive to Minnesota, would be home for a week, and then leave again for Shreveport, Louisiana. (Tr. 203). Plaintiff wanted stronger pain medications because she was concerned about being able to be in the car that long, but was nevertheless able to travel to Minnesota and Louisiana.

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's findings as to what constitutes severe impairments in this case.

### B.     RFC and Weight Given to Physicians' Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes

medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In his decision, the ALJ discussed Plaintiff's medical records, observations of treating physicians and other physicians, and Plaintiff's descriptions of her limitations. He discussed the surgeries Plaintiff underwent before and after the relevant time period, as well as Plaintiff's reports of her daily activities. (Tr. 12). The ALJ also considered the testimony of Plaintiff's husband, and found that although it was supportive of Plaintiff's statements, it added little new information to the evaluation of the severity of Plaintiff's impairments prior to December 31, 2003. (Tr. 12).

Plaintiff argues that the ALJ improperly gave little consideration to Plaintiff's treating physician's opinion. With respect to weight given to the opinions of treating physicians, "[a]

6

claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at \*3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id.  "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

Dr. Emerson completed a Physical Medical Source Statement on October 18, 2012, reporting that she had been treating Plaintiff since December 14, 2001. (Tr. 308). She concluded that Plaintiff was: unable to occasionally lift/carry 10 pounds; unable to occasionally reach; could occasionally handle and finger; could stand/walk for a total of one hour; could sit for a total of two hours; and would be absent more than three times a month. (Tr. 309). She concluded that Plaintiff had been unable to do any work of any kind due to chronic low back pain, requiring opiate pain therapy since her first visit with Plaintiff on December 14, 2001, and that Plaintiff had decreased focus, concentration, attention, storage of new memory due to her chronic continued pain as well as due to opiate pain therapy. (Tr. 310).  Dr. Emerson reported that she did not expect improvement in her chronic pain syndrome in her lifetime. (Tr. 310).

On April 13, 2012, non-examining consultant, Dr. Alice M. Davidson, completed a Physical RFC Assessment, wherein she concluded that during the relevant time period,

Plaintiff could perform light work with no limitations. (Tr. 297-304). On May 24, 2012, Dr. Valeria Malak affirmed Dr. Davidson's assessment. (Tr. 307).

The ALJ discussed Dr. Emerson's Physical Medical Source Statement, and gave it "little weight in evaluating the claimant's condition prior to December 31, 2003, as the severity of limitations given is not supported by Dr. Emerson's own notes for that period." (Tr. 16). The ALJ also considered the opinions of the state agency medical consultants and gave them great weight, concurring with their finding that Plaintiff was capable of light work, prior to her date last insured of December 31, 2003. (Tr. 16).

A review of the record leads the Court to conclude that treatment records during the relevant time period from September 4, 2001, through December 31, 2003, do not support Plaintiff's claim of total disability. Dr. Emerson's treatment records during the relevant time period included numerous diagnoses, but the physical examination notes remained mostly unchanged during that time period, and Plaintiff did not undergo any surgeries to her back or neck until many years after the relevant time period. Plaintiff was referred to Dr. Luke Knox, a neurosurgeon, and was seen by him one time during the relevant time period – June of 2002. (Tr. 704). Plaintiff did not see him again until 2006. (Tr. 703). In 2002, Dr. Knox diagnosed Plaintiff with L4-5, DDD, and wanted Plaintiff to see Dr. Cannon for a "Marcaine Discogram." (Tr. 666). In a letter Dr. Knox wrote to Dr. Emerson, dated June 11, 2002, Dr. Knox stated, in pertinent part:

> Neurologically, although I could not discern any evidence of motor or sensory deficit, she did have significant paraspinal muscle spasm. Her reflexes were symmetric.
>
> We reviewed her MRI scan which indeed showed the significant degenerative disc changes noted at 4-5. It also had some endplate changes.

8

> I informed Patricia that there was a possibility that any surgical endeavor may not offer significant relief but, if one was to consider an operative procedure, we may want to consider a lumbar fusion at the 4-5 level. Prior to that, however, I have asked that she follow up with Dr. Cannon to undergo a Marcaine test dose with discography at the 4-5 level to see if it may not afford some relief of her symptoms. If indeed it did not offer any benefit, I would lean towards avoiding any surgical endeavors at this point and simply pursue an extensive chronic pain management program. This was discussed in detail.

(Tr. 704).

It is noteworthy that there were few records of any treatment from March 2004 until October of 2006, and that Plaintiff did not return to see Dr. Knox until October of 2006. The ALJ properly noted that this lack of treatment "would appear to indicate that her impairments were not causing her severely disabling symptoms, requiring regular and continuing care, immediately after her date last insured." (Tr. 16). See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000 (the failure to seek treatment for two years was inconsistent with disability claims).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various physicians' opinions.

C. **Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While

9

an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 12). The fact that Plaintiff'a health may have worsened in subsequent years does not demonstrate disability during the relevant time period. Dr. Emerson's treatment records during the relevant time period do not support a finding of disability. In addition, Plaintiff went approximately two years after the relevant time period with little, if any, treatment. Finally, the state agency physicians who reviewed the evidence during the relevant time period found Plaintiff would be able to perform a full range of light work without limitations.

Accordingly, based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### D.     Whether Plaintiff Could Return to her Past Relevant Work:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the

record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing her prior work as a nursing teacher during the relevant time period.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 24th day of August, 2015.


*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE